**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUST JOSH, INC.*, and all others similarly situated*, | Case No.: |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| v. | |
| RETAILMENOT, INC. and ZIFF DAVIS, INC., | |
| *Defendants.* | |

**CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................... 1

II.    PARTIES ............................................................................................... 2

    A.  Plaintiff Just Josh, Inc. ................................................................ 2

    B.  Defendant RetailMeNot, Inc. ....................................................... 3

III.   FACTUAL ALLEGATIONS ................................................................ 3

    A.  Digital Marketers Commission System ..................................... 3

    B.  RetailMeNot's Shopping Extension ........................................... 4

    C.  RetailMeNot Exploits Last Click Attribution .......................... 8

    D.  Damages & Harm ......................................................................... 8

IV.   JURISDICTION AND VENUE ......................................................... 10

V.    CLASS ACTION ALLEGATIONS .................................................. 10

VI.   STATUTE OF LIMITATIONS TOLLING......................................... 12

VII.  CAUSES OF ACTION ...................................................................... 13

    COUNT ONE - CONVERSION ...................................................... 13

    COUNT TWO - TORTIOUS INTERFERENCE WITH CONTRACTUAL
    RELATIONS ................................................................................... 14

    COUNT THREE - VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
    ..................................................................................................... 15

    COUNT FOUR - VIOLATION OF THE ELECTRONIC COMMUNICATIONS
    PRIVACY ACT.............................................................................. 17

    COUNT FIVE - VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT ............. 19

VIII.  PRAYER FOR RELIEF ................................................................... 20

Plaintiff Just Josh, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants RetailMeNot, Inc. and Ziff Davis Inc. ("Defendants" or "RetailMeNot"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    Coupon browser extensions are widely used by online shoppers to identify coupons and discounts on products and services they have already added to their online shopping cart.

2.    According to Defendants, the RetailMeNot Browser Extension (the "Extension") is a free all-in-one savings tool that automatically scans the internet, tests, and applies coupon codes and cash back offers, every time you shop. RetailMeNot's Extension is easily downloaded on desktop and laptop computers and can also be used on mobile devices including both phones and tablets.

3.    Because of this, the RetailMeNot extension is appealing to customers looking for a discount on a product or service they are already interested in purchasing and have already added to their online shopping cart.

4.    RetailMeNot's Extension, however, is designed to steal commissions from online content creators, including but not limited to website operators, online publications, YouTubers, influencers, and other creators in the online community ("Creators").

5.    Creators earn money by directing their followers and viewers to specific products and services, which are linked on their respective platforms and social medial channels. A link used to purchase a particular product at a particular e-commerce site is called an "affiliate link."

1

When a Creator's followers and viewers purchase products and services using an affiliate link, the Creator gets credit for the referrals and earns commissions on the sales.

6.    Online retailers work with Creators through affiliate marketing programs, which rely on tracking tags and affiliate marketing cookies in order to determine who gets credit for online referrals and product sales.

7.    The Creator is given a specific web link to share with their followers and audience, and if someone clicks on that link, the Creator's unique affiliate marketing cookie populates and credits the Creator with the sale.

8.    However, the RetailMeNot Extension cheats Creators out of commissions they are entitled to during the checkout process.

9.    As described in more detail throughout this complaint, RetailMeNot programmed its Extension to systematically appropriate commissions that belong to Creators, like Plaintiff and Class members. It does so by substituting its own affiliate marketing identity code into a shopper's cookie in place of the creator's affiliate marketing identity code, and this happens even though the customer used the Creator's specific affiliate web link to purchase a product or service.

10.    Plaintiff is a Creator whose commission payments were wrongfully misappropriated by RetailMeNot. Plaintiff brings this case on his own behalf and on behalf of all others similarly situated to recover the damages they have sustained and enjoin RetailMeNot's wrongful conduct going forward

## II.    PARTIES

### A.    Plaintiff Just Josh, Inc.

11.    Plaintiff Just Josh, Inc. is an S corporation organized and existing under the laws of Arizona. Plaintiff's principal place of business is Scottsdale, Arizona.

**B.    Defendant RetailMeNot, Inc.**

12.    RetailMeNot, Inc. is a Delaware corporation with, according to its website, a principal place of business at 301 Congress Ave, Suite 700, Austin, Travis County, Texas. RetailMeNot, Inc. is owned by Ziff Davis, which has its principal place of business at 360 Park Avenue South, 17th Floor, New York City, New York, 10010.

### III.    FACTUAL ALLEGATIONS

**A.    Digital Marketers Commission System**

13.    ECommerce merchants market their products through the use of affiliate marketing commission links provided to influencers and content creators. Creators include YouTubers, bloggers, podcasters, Instagram influencers, TikTokers, and much more. Many Creators and merchants work through affiliate networks that act as intermediary platforms connecting eCommerce merchants with affiliate promoters and managing the technical implementation. This affiliate marketing industry surged to 15.7 billion in 2023.

14.    Creators earn their commissions by providing specialized tracking links to their audience. These tracking links are unique URLs that connect consumers to merchants' product pages while recording the referral source in a cookie that is stored on the consumer's web browser. This cookie has a defined lifetime, often no more than 90 days, during which time the affiliate can receive credit for the purchase, even if the customer returns to the merchant's site directly.

15.    If the user is directed to the merchant's site by a second affiliate Creator, then the original affiliate marketer's code within the cookie is overwritten, ensuring that only the Creator that generated the last-click receives the commission.

**B.    RetailMeNot's Shopping Extension**

16.    The RetailMeNot Extension is free to use and available through various web browser stores including Google Chrome, Microsoft Edge, Safari, and Firefox.

17.    RetailMeNot advertises that they provide "the best coupons, promo codes and cash back offers."[1] Defendants further provide that they offer "automatic coupons and cash back when you shop" and that the Extension is "an all-in-one savings tool that does the work for you! Our extension will automatically find, verify and stack all eligible codes and cash back offers every time you shop."[2]

18.    However, RetailMeNot does not tell consumers that Defendants fund their provision of cash back and coupons by hijacking Creator's affiliate marketing commissions.

19.    RetailMeNot uses the Extension to take credit for sales commissions it did not generate – sales instead generated from a Creator's unique marketing affiliate link.

20.    RetailMeNot's Extension does so by altering the tracking tags within the cookies that are read and transmitted during the checkout process and substituting its own tracking tags, holding RetailMeNot out as the referrer of the product and/or service.

21.    RetailMeNot misappropriates the commission for the sale even if it emanated from an online marketer's specific affiliate marketing link for the product or service.

22.    The images below show what happens when an online shopper clicks on a Creator's affiliate link to purchase a product or service and proceeds to "checkout" that product or service. Whether the Creator who actually generated the purchase receives the referral and commission depends on whether the shopper has activated RetailMeNot's Extension.

---

[1] RetailMeNot, https://www.retailmenot.com/ (last visited Feb. 14, 2025).
[2] RetailMeNot, https://www.retailmenot.com/extension (last visited Feb. 14, 2025).

23.     Image 1 shows Plaintiff's affiliate marketing link that would otherwise ensure that Just Josh received his affiliate commission. Plaintiff's affiliate marketing link then redirects the user to BestBuy through their howl.me indicating that Just Josh referred a consumer to Best Buy's website.



Image 1: This is a screenshot taken just before a consumer is referred to a merchant's website due to Plaintiff's content and recommendations. This is a screenshot taken during the checkout process at bestbuy.com after clicking on Plaintiff Just Josh's affiliate marketing link.

24.     Image 2 shows the merchant's website and the inspection panel which shows what is happening in the background before the RetailMeNot Extension is activated. In this Image, the user clicked on a Creator's affiliate marketing link and is navigating to checkout. At this point, RetailMeNot's Extension is available but has not been activated. This Image below shows that the campaign and partner cookies attribute the referral to "Howl Technologies," indicating that Just Josh should be credited with a referral.

5



Image 2: This is a screenshot taken during the checkout process at bestbuy.com after clicking on Plaintiff Just Josh's affiliate marketing link. The zoomed-in image shows the affiliate marketing cookie correctly attributes Just Josh with the referral and sale of the product.

25.    In this scenario, shown by Images 1 and 2, Just Josh rightfully gets credit for the referral and would receive a commission based on its partnership with the merchant, Best Buy, as long as the customer did not engage the RetailMeNot extension.

26.    However, as shown in Images 3 and 4, RetailMeNot creates a pop-up, alerting the customer that she can earn cash back with the purchase. If the customer clicks the button "Apply Cash Back", the Extension is activated and replaces the Creator's affiliate marketing code with RetailMeNot's affiliate marketing code ("WhaleShark Media") as shown below. Notably, WhaleShark Media is the former name of RetailMeNot.



Image 3: This image is a screenshot captured as the consumer is checking out and the RetailMeNot Extension incentivizes the user to earn cashback.



Image 4: This image is a screenshot demonstrating that after the Extension's cashback is activated, RetailMeNot has hijacked Plaintiff's cookie value and the sales commission. The new cookie value is "WhaleShark Media," a former name of RetailMeNot.

7

27.    RetailMeNot's Extension steals credit for the referral commission even though the Defendants did not recommend the product, inform the consumer about the product in any way, help the shopper identify the product, or offer any coupons for the product. This theft of the commission occurs even though the customer used Just Josh's affiliate link to go to Best Buy and select the referred product.

### C.    RetailMeNot Exploits Last Click Attribution

28.    When a consumer clicks on a Creator's affiliate marketing link, a tracking tag is generated, allowing the merchant to know who should be credited with the referral and earn commission for the sale.

29.    The tracking tag is saved on the user's browser within a cookie. The cookie will expire sometime in the future, depending on the specific affiliate program – usually between 2-30 days. This ensures that the online marketer will get credit for the sale, even if it takes a few days for the consumer to make the purchase.

30.    The industry-standard for crediting sales is that the last click determines who gets credit for the sale – known as "last click attribution."

31.    The RetailMeNot Extension exploits last-click attribution by creating pop-ups during the checkout process. By doing this, RetailMeNot forces customers to engage with the RetailMeNot's Extension – via clicks - to receive a discount, test coupons, or earn cash back. When the customer clicks on the Extension, RetailMeNot takes credit for the sale by replacing the affiliate link as the last-click, even when it has not identified any applicable coupons

### D.    Damages & Harm

32.    On information and belief, Plaintiff and Class Members were harmed by RetailMeNot because the Extension systematically steals commission payments from their rightful

owners – i.e. the Creators who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

33.    When RetailMeNot replaces Plaintiff's referral tags with their own, Plaintiff has been deprived of referral fees and sales commissions to which he is rightfully entitled.

34.    The RetailMeNot Extension is activated during millions of online purchases each year. In the absence of the RetailMeNot Extension, Plaintiff and Class Members would have earned money in the form of referral fees and sales commissions from their respective affiliate marketing links.

35.    Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the RetailMeNot Extension continues to steal affiliate marketing commissions with each passing day.

36.    Defendants systematically steal commissions from Creators that promoted the merchant's products and drove customers to their eCommerce stores.

37.    Plaintiff Just Josh, Inc. has worked since 2019 to review electronic products and provide valuable content to viewers through their YouTube channel and website. Just Josh has produced nearly 300 YouTube videos and boasts 288,000 subscribers to his channel. In November 2024, Just Josh's website received 68,000 visitors.

38.    Just Josh has relied on affiliate marketing links on YouTube and its website since its inception. The Just Josh Inc. Website received 64,000 unique visitors in November 2024.

39.    Just Josh has spent substantial time and money developing a community of viewers that support it and reviewing products for which it provides affiliate links. In November 2024, Just Josh, Inc. Received approximately $50,000 in affiliate link revenue.

40.    Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the RetailMeNot Extension continues to steal affiliate marketing commissions with each passing day.

## IV.    JURISDICTION AND VENUE

41.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendants, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

42.    This court has personal jurisdiction over RetailMeNot because RetailMeNot is owned by Ziff Davis, which has its principal headquarters in New York, New York, does business in New York, directly or through agents, and has sufficient minimum contacts with New York such that it has intentionally availed itself of the laws of the United States and New York.

43.    Venue is proper under 28 U.S.C. § 1391(a) through (d) because Defendants' headquarters and principal place of business are located in this District, Defendants reside in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Defendants' governance and management personnel.

## V.    CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

**Nationwide Class**: All persons and entities in the United States who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to RetailMeNot.

**Arizona Subclass**: All persons and entities in Arizona who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to RetailMeNot.

45.    **Numerosity and Ascertainability**: Members of the Class are so numerous that joinder is impracticable. The Class encompasses at least tens of thousands of individuals and entities geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all subclass members is similarly impracticable.

46.    Commonality and Predominance: This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a.  Whether RetailMeNot developed and structured the RetailMeNot Extension in a way that unfairly attributes sales referrals to RetailMeNot;

b.  Whether RetailMeNot was unjustly enriched to the detriment of Plaintiff in the form of commission payments;

c.  Whether the system described herein results in RetailMeNot being awarded commission payments it did not rightfully earn;

d.  Whether consumers and Class members have been damaged by RetailMeNot conduct; and

e.  The nature and scope of appropriate injunctive relief.

47.    **Typicality**: Plaintiff's claims are typical of the other Class members' claims because all Class members were comparably injured through Defendants' substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf

of themselves and all other members of the Class that they represent, and there are no defenses that are unique to the Plaintiff. The claims of Plaintiff and Class members arise from the same operative facts and are based on the same legal theories.

48.    **Adequacy**: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and his counsel.

49.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriments suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    STATUTE OF LIMITATIONS TOLLING

50.    All applicable statute(s) of limitations have been tolled by RetailMeNot's active and knowing concealment and denial of the facts alleged herein. Plaintiff and Class members had

no reasonable means of discovering that RetailMeNot was covertly stuffing cookies and modifying network data to claim commissions for sales it did not legitimately generate.

51.     RetailMeNot has an ongoing obligation to disclose to Plaintiff and Class members its practice of replacing affiliate marketing tags that identify marketers as the source of referrals, substituting them with its own tracking tags to redirect commissions that rightfully belong to marketers such as Plaintiff and Class members. Due to RetailMeNot's active concealment of this practice, any statutes of limitations that would typically apply to these allegations have been tolled and suspended.

## VII.    CAUSES OF ACTION
### COUNT ONE
**CONVERSION**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

52.     Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

53.     Plaintiff and Class Members possessed or had the right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. Each commission constitutes a specific and identifiable sum.

54.     RetailMeNot intentionally and substantially interfered with Plaintiff's and Class members' personal property by usurping their commissions and referral fees.

55.     Without proper authorization, RetailMeNot assumed and exercised the right of ownership over these commissions, in direct hostility to the rights of Plaintiff and Class members, without justification.

56.     RetailMeNot's wrongful exercise of control over Plaintiff's and Class members' personal property amounts to conversion.

57.    Plaintiff and Class members neither assented to nor ratified RetailMeNot's interference with their referral fees or commissions.

58.    As a direct and proximate result of RetailMeNot's conversion, Plaintiff and the Class were harmed.

59.    RetailMeNot is liable to Plaintiff and the Class for damages and costs permitted by law.

**<u>COUNT TWO</u>**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

60.    Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

61.    Plaintiff and the Class are engaged in contracts or ongoing business relationships with eCommerce merchants. Plaintiff and the Class drive customers to merchant stores through affiliate links, and in return the merchants provide Plaintiff and the Class with commissions. These contracts and economic relationships are ongoing.

62.    RetailMeNot knew that Plaintiff and the Class worked to drive customers to their merchant partners' websites through affiliate links. RetailMeNot knew that Plaintiff and the Class received their commissions based on associated unique affiliate codes in cookies, and that the merchants assessed the success of their affiliate program based on these cookies. RetailMeNot knew these contractual and business relationships existed.

63.    RetailMeNot intentionally disrupted Plaintiff and the Class's performance of the contractual and business obligations, or knew that their actions made performance more expensive, difficult, or impossible. RetailMeNot displaces the codes that identify Creators as the sources of the referral, stuffs their own affiliate code into cookies, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online

14

marketer's affiliate marketing link. RetailMeNot intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiff and Class members.

64.    Plaintiff and the Class were harmed by Defendants' conduct because the RetailMeNot Extension deprives them of commissions and referral fees they rightfully earned as the true drivers of the merchant sales.

65.    As a direct and proximate result of RetailMeNot's conduct, Plaintiff and the Class suffered economic injury by being deprived of commissions they should have earned through their affiliate links.

66.    As a result of the conduct described above, RetailMeNot is liable to Plaintiff and the Class for damages in an amount to be determined at trial.

## <u>COUNT THREE</u>

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. §§ 1030, *et seq.***
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

67.    Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

68.    The Computer Fraud and Abuse Act ("CFAA"), enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

69.    The CFAA provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[]…information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

70.    18 U.S.C. § 1030(g) provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of this section[.]"

71.     The CFAA further provides that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value…." 18 U.S.C. § 1030(a)(4).

72.     Plaintiff and Defendants, as corporations or legal entities, are "persons" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(12).

73.     A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

74.     "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

75.     A "protected computer" is defined as "a computer . . . which is used in or affecting interstate or foreign commerce or communication…, [or that] has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B).

76.     Plaintiff's and Class Members' smartphones constitute a "computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1).

77.     The laptops, desktops, smartphones, and tablets of Plaintiff and Class Members are used in and affect interstate and foreign commerce and constitute "protected computers" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(2)(B).

78.     Defendants violated § 1030(a)(4), by knowingly, and with intent to defraud Plaintiff and Class members, accessing cookies on consumers' browsers containing Plaintiff's and Class

members' data, via the RetailMeNot Extension, and altered that data without data without authorization or by exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained commissions earned by Plaintiff and Class members.

79.     Defendants' access was without authorization or in excess of authorized access, because the purpose of the access was to enact a commission diversion scheme, whereby Defendants surreptitiously used consumers' computers to defraud Plaintiff and Class members by altering Plaintiff's and Class members' data to steal their commissions.

80.     Plaintiff and Class members have suffered damage and loss, aggregating at least $5,000 in value in any 1-year period during the relevant period, including, without limitation, their earned commissions as a result of Defendant's violation of 18 U.S.C. § 1030.

81.     Defendants' unlawful access to and theft of Plaintiff's and Class members' commissions through unauthorized access of data on consumers' computers caused Plaintiff and Class members irreparable injury. Unless restrained and enjoined, Defendants will continue such acts. Plaintiff's and Class members' remedies at law are not adequate to compensate them for these threatened injuries, entitling Plaintiff and Class members to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

### COUNT FOUR
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### 18 U.S.C. §§ 2510, *et seq.*
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

82.     Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

83.     The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., makes it unlawful for a "person" to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

84.     18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

85.     The transmission of Plaintiff's and Class members' unique affiliate source data (i.e., unique ID and coupon code) to the merchant (via the cookie generated by consumer action) qualifies as Plaintiff's and Class Members' "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

86.     By allowing the RetailMeNot Extension to intercept and surreptitiously manipulate Plaintiff's and Class members' unique ID and coupon code contained in a cookie on consumers' web browsers, Defendants intentionally intercepted and/or endeavored to intercept the contents of "electronic communications" in violation of 18 U.S.C. § 2511(1)(a).

87.     No party to the electronic communication alleged herein consented to Defendants' interception and manipulation of the electronic communication. Nor could they because Defendants' actions were surreptitious.

88.     18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under this chapter [18 USC §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

89.     Defendants do not meet the requirements of the "party exception" to the ECPA because, as detailed herein, the electronic communications intercepted by Defendants were intercepted as part of Defendants' tortious practice of converting commissions and interfering with

Plaintiff's and Class Members' economic advantage, that is also in violation of federal law, Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

90.    Accordingly, Defendants violated the ECPA each time they intercepted Plaintiff's and Class members' electronic communications via the RetailMeNot Extension.

91.    Pursuant to 18 U.S.C. § 2520, Plaintiff and Class members have been damaged by the interception of their electronic communications in violation of the ECPA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendants as a result of its violations, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT FIVE
### VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT
#### A.R.S. §§ 7 44-1521, et seq.
(ON BEHALF PLAINTIFF AND THE ARIZONA SUBCLASS)

92.    Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

93.    RetailMeNot is a "person" as defined by A.R.S. § 44-1521(6).

94.    RetailMeNot advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

95.    RetailMeNot engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

96.     RetailMeNot's business acts and practices are unfair and deceptive because they wrongfully interfere with Plaintiff's and the Arizona Subclass's business and contractual relationship, causing harm.

97.     RetailMeNot wrongfully deprives Plaintiff and Subclass members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

98.     RetailMeNot actually and proximately caused harm to Plaintiff and Subclass members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

99.     The conduct alleged herein is continuing and there is no indication that RetailMeNot will cease such activity in the future.

100.    RetailMeNot's conduct in violation of the ACFA has caused Plaintiff and Subclass members to be deprived of referral fees and commission payments for sales they rightfully originated. Plaintiff and the members of the Arizona Subclass thus suffered lost money or property as a result of RetailMeNot's conduct.

101.    As a consequence of the unfair or deceptive acts engaged in by RetailMeNot, Plaintiff and the Class have been damaged in an amount to be proven at trial, and Plaintiff and the Class are entitled to an injunction, all other appropriate relief in equity, restitution, the recovery of their actual damages, trebled, plus attorney's fees and other costs of this action.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.     Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B.      Enter judgment in favor of Plaintiff and the Class;

C.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class Members, including reformation of practices to prevent the RetailMeNot Extension from taking credit for sales it did not originate;

D.      Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E.      Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.      Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G.      Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by RetailMeNot through its wrongful conduct;

H.      Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I.      Award such other and further relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: February 19, 2025                         Respectfully submitted,

                                                 */s/ Steven M. Nathan*
                                                 Steven M. Nathan (NY 2156289)
                                                 **HAUSFELD LLP**
                                                 33 Whitehall Street
                                                 Fourteenth Floor

New York, NY 10004
(646) 357-1100
snathan@hausfeld.com

Thomas E. Loeser*
Karin B. Swope*
Jacob M. Alhadeff*
**COTCHETT, PITRE & MCCARTHY**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206)-802-1272
Facsimile: (206)-299-4184
tloeser@cpmlegal.com
kswope@cpmlegal.com
jalhadeff@cpmlegal.com

***Counsel for Plaintiff***

***\* pro hac vice forthcoming***